IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN C. MCCLURKIN,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant.[1] | Civ. No. 19- 00234 JMS-RT<br><br>ORDER REVERSING ALJ DECISION AND REMANDING FOR FURTHER PROCEEDINGS, ECF NO. 13 |

## ORDER REVERSING ALJ DECISION AND REMANDING FOR FURTHER PROCEEDINGS, ECF NO. 13

### I. INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security Andrew Saul (the "Commissioner" or "Defendant"). John C. McClurkin ("Plaintiff" or "Claimant") appeals the Commissioner's adoption of the Administrative Law Judge's ("ALJ") October 19, 2018 decision finding Claimant not disabled under the Social Security Act ("ALJ Decision"). He argues that the ALJ Decision must be overturned

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commission of Social Security). The Clerk of Court is DIRECTED to change the case name to the caption herein.

because the ALJ committed legal error when he failed to consider the medical opinion of examining psychologist, Dr. Donald Conner, before finding Claimant not disabled. The court agrees. For the reasons below, the court REVERSES the ALJ's decision and REMANDS for further proceedings.

## II. BACKGROUND

**A.     Factual Background**

*1.     Claimant's Background*

Claimant was born in 1968. Admin. R. ("AR")[2] 410. He attended college and served in the United States Army from 1997 to 2015. *Id.* at 467. He subsequently worked as a mortgage consultant from December 2015 to June 2016. *Id.* He alleged he has been disabled since June 28, 2016 because of post-traumatic stress disorder ("PTSD"), degenerative disc disease, and asthma. *Id.* at 466.

*2.      The ALJ's Findings and Decision*

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled

---

[2] The AR is numbered sequentially from pages 1 to 1938 and is available from ECF No. 8-1 through ECF No. 10-5.

only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *Id.* § 423(d)(2)(A).

The Social Security Administration ("SSA") has established a five-step sequential analysis to assess disability claims, which asks:

(1) Has the claimant been engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Has the claimant's alleged impairment been sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity ("RFC")[3] to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

---

[3] The RFC is "the most [a claimant] can still do despite [any] limitations" based on claimant's "impairment(s), and any related symptoms, such as pain [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a).

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520). For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the claimant reaches step five, the burden shifts to the Commissioner. *Id.*

Under the five-step rubric, the ALJ found Claimant not disabled. Specifically, the ALJ found that Claimant has not engaged in substantial gainful activity under step one. AR 41. Claimant has the severe impairments of "incipient degenerative disc disease; lumbar spondylosis; asthmas; adjustment disorder with mixed depression and anxiety; and [PTSD]" under step two. *Id.*

These impairments though, alone or in combination, do not meet or medically equal the severity of one of the listed impairments under step three. *Id.* at 42. Under step four, the ALJ found that Claimant is unable to perform past relevant work. *Id.* at 50. And the ALJ found the Claimant not disabled under step five after assessing various testimony from both Claimant, third-parties, and expert opinion testimony. *Id.* at 51.

Specifically, in reaching this finding, the ALJ found Claimant's symptom testimony "[in]consistent with the medical evidence and other evidence in the record." *Id.* at 45. He also gave some limited weight to third-party

statements from Claimant's spouse, Shari Anne McClurkin, and his friend, Jason Rogers. *Id.* at 49. Furthermore, as to the opinion evidence, he afforded various weights to the medical opinion testimony. *See generally id.* at 47-50. He gave substantial weight to the assessments from examiner, Dr. Jeff Altman, and non-examining medical consultant, Dr. G. Taylor-Holmes. *Id.* at 47. He gave great weight to the assessments by the state agency psychological consultants, Drs. S. Adamo and Elizabeth Covey. *Id.*

He gave little weight to non-examining medical consultant Dr. J. Hartman. *Id.* at 47. He also gave little weight to psychiatric consultative examiner Dr. Jaga Nath Glassman. *Id.* He further gave some limited weight to the Veteran Affairs' ("VA") assessment classifying Claimant as 100% disabled. *Id.* at 48. Lastly, he gave little weight to a February 10, 2018 letter from nurse Kristin Lulich, questionnaires regarding the mental impairment and RFC of Claimant from Ms. Lulich and Dr. Lisa Campbell, and a letter from chaplain Henry L. Peterson. *Id.*

The ALJ also relied on the testimony of vocational expert Shirley K. Ripp. *Id.* at 50; *see also id.* at 39 (noting Ripp as the vocational expert present at the hearing). Specifically, during the hearing, the ALJ questioned vocational expert Ripp on various vocational profiles, giving various hypotheticals, seeking

5

the available vocational occupations for each of these restrictions. *Id.* at 120.

First, the vocational expert was told to assume there is

> a person who would be capable of medium exertion work, but no greater . . . with the following restrictions: The person should avoid exposure to dust, odors, fumes, and pulmonary irritants; can balance, stoop, kneel, crouch, and crawl frequently; can frequently climb ramps and stairs; occasionally climb ladders and scaffolds but should never climb ropes; and overhead reaching would be limited bilaterally to frequent. Let's also assume the person should have no more than occasional exposure to extreme heat or code.

*Id.* at 121. Under such profile, the vocational expert agreed that "past work and . . . two transferrable skill jobs . . . could be performed" by Claimant. *Id.*

Second, the vocational expert was to assume all the same facts as above, applying Claimant's transferable skills, except that Claimant would be capable of light exertion work, instead of medium exertion work. *Id.* All but one occupation was still available. *Id.* at 121-22 (eliminating the tank crew position but finding "the rest would be okay at light").

Third, the vocational expert was given the restrictions at medium (i.e., the first scenario), but limited contact "to no more than occasional contact with coworkers, supervisors, or the public, and also to work involving simple or detailed tasks but not complex tasks." *Id.* at 122. At that point, the only position available would be a security guard. *Id.* at 123.

6

Fourth, the ALJ proffered further restrictions, given the restrictions at medium (i.e., the third scenario) for unskilled work, but instead of "simple or detailed tasks," Claimant was limited to "simple and routine tasks." *Id.* at 123. Then there would be no positions available. *See id.* at 123.

Finally, the ALJ gave one last fifth scenario: "occasional . . . contact" with "coworker[s], supervisor[s], and public," "no exposure to dust, odors, fumes, or pulmonary irritants" with "simple, routine tasks" and other "limitations [outlined in scenario one]" of an unskilled worker, *id.* at 124, the vocational expert identified no jobs available with medium exertion, but found the jobs of deli cutter/slicer, outsider deliverer, and marker available as requiring light exertion. *See id.* at 125-26.

Subsequently, the vocational expert testified that if Claimant was "off task 20 percent of the time," there would be no jobs available. *Id.* at 127. At most, Claimant could not be more than ten percent off task before he is considered unemployable. *Id.* This additional testimony, however, does not appear to have factored into the ALJ's analysis. *See id.* at 126-27.

Ultimately, the ALJ found Claimant not disabled under step five, because vocational expert Ripp identified other jobs available, including "Marker," "Deli Cutter-Slicer," and "Outsider Deliverer" (i.e., jobs identified as available under the fifth scenario). *Id.* at 51.

7

### B. Procedural Background

The ALJ denied Claimant's petition for disabilities on October 19, 2018, and Claimant timely filed a request for a review by the SSA Appeals Council. *See* Compl. ¶ 10, ECF No. 1 at PageID #3. On March 18, 2019, the Appeals Council denied Claimant's request for review and adopted the ALJ Decision as the final decision of the Commissioner. *Id.* ¶ 11, ECF No. 1 at PageID #3. Claimant filed his appeal of the final decision before this court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *See id.* ¶¶ 1-3, ECF No. 1 at PageID #1-2.

Claimant filed his Opening Brief on September 27, 2019. ECF No. 13. The Commissioner filed its Answering Brief on November 14, 2019. ECF No. 14. And Claimant filed his optional Reply Brief on November 24, 2019. ECF No. 15. The court held a hearing on January 13, 2020.

### III. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing findings of fact with respect to such determinations, the court must uphold the Commissioner's decision, made through an ALJ, "unless it is based on legal error or is not supported by substantial evidence." *Ryan v.*

*Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)) (internal quotation marks omitted). With that said, however, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Ryan*, 528 F.3d at 1198 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## IV. **DISCUSSION**

Plaintiff raises only a single issue on appeal—the ALJ committed legal reversible error by failing to consider the Compensation and Pension Exam ("C&P exam")[4] conducted by Dr. Conner, which Plaintiff claims contained medical opinions. The court agrees.

---

[4] The C&P exam is an examination conducted by the VA for purposes of evaluating disability claims. *See, e.g.*, VA Claim Exam (C&P Exam), https://www.va.gov/disability/va-claim-exam/ (last visited Jan. 15, 2020) ("After you file your disability benefits claim, we may ask you to have a claim exam . . . . This exam will help us rate your disability."). The VA relies on the C&P exam, in part, to determine disability and the amount of compensation a veteran will receive. *See id.*

9

## A. Whether the June 3, 2016 C&P exam contained a medical opinion

Under SSA's regulations, "medical opinions" are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

"In determining whether [claimant is] disabled, [SSA] will always consider the medical opinions in [claimant's] case record together with the rest of the relevant evidence [received]." *Id.* at subsection (b). "Regardless of its source, [SSA] will evaluate every medical opinion [it] receive[s]." *Id.* at subsection (c). Claimant identifies statements made by Dr. Conner, an examining physician, in a questionnaire Dr. Conner completed for purposes of a C&P exam, arguing that these statements amount to a medical opinion. In completing the questionnaire, Dr. Conner made the following statements about Claimant:

> [the symptoms of] anxiety, panic attacks, hypervigilance, nightmares can be attributed to the PTSD. The low mood, irritability, amotivation and some of the insomnia are secondary to the depression.
> . . .
> [and as to occupational and social impairment] it is more likely than not that his depression does effect (sic) his ability to sustain concentration at work and his decrease in performance and job stress is adding to his depression.

> . . .
> His PTSD effects (sic) his function mostly in regard to the sleep disturbance from nightmares and his panic attacks. Overall he is function well out side (sic) of work and his major problem in the work setting is decreased focus when being trained by a supervisor since he lost his "mentor" (also a former service member). This decreases his efficiency in the training situation. Since this does not appear to occur in other situations or with co-workers, etc. it appears to be more psychological than physiological.

AR 1058-60.

Dr. Conner's statements clearly discuss the severity of Claimant's impairments. Dr. Conner opines, for example, that Claimant's depression "[a]ffect[s] his ability to sustain concentration at work," a statement that easily falls within the definition of "medical opinion" under SSA regulations. The ALJ's failure to consider such medical source was legal error. *See Andrews v. Colvin*, 2016 WL 4545317, at *4-5 (W.D.N.C. Aug. 31, 2016) (noting that the ALJ failed to consider various medical opinions within the VA record, including opinions contained in various C&P exams conducted by VA psychiatrists and medical doctors); *see also Biggins v. Comm'r of Soc. Sec.*, 2019 WL 4688733, at *4 (W.D.N.Y. Sept. 26, 2019) ("Despite the ALJ's awareness of the VA disability determination, there is nothing in this record demonstrating the ALJ considered the [C&P] examinations [conducted by the VA] . . . . Although the ALJ gave some

11

consideration to the VA disability rating determination, she committed plain error by failing to give adequate consideration to the [C&P] exams.").[5]

The Commissioner argues that such statements do not amount to a medical opinion under Social Security regulations because Dr. Conner "did not indicate what Plaintiff could do despite his limitations, what restrictions he would have, or otherwise clearly opine on the nature and severity of Plaintiff's impairments." Answering Brief at 13, ECF No. 14 at PageID #2035 (citing 20 C.F.R. § 404.1527(a)). The court disagrees. The Commissioner's interpretation unduly limits what constitutes a medical opinion and misconstrues the plain text of the regulation. The regulation clearly states that medical opinions may "*includ[e]* symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R.

---

[5] The court is aware that in other circumstances, other district courts have found that C&P exams do not contain medical opinions. *See Deprez v. Berryhill*, 2017 WL 4938228, at *12 (M.D. Tenn. Sept. 20, 2017) (Report and Recommendation rejecting the argument that a C&P exam contained medical opinion, in part, because plaintiff could not point to a particular excerpt statement); *Parker v. Colvin*, 2017 WL 3709090, at *9 (E.D. Va. Apr. 17, 2017) (finding C&P exam not a medical opinion because it is used for disability benefits, and not for medical treatment). To clarify, the court's holding today does not draw a bright line rule that *every* C&P exam contains a medical opinion. Rather, statements within a C&P exam *could* amount to a medical opinion if they "reflect judgments about the nature and severity of [claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions," 20 C.F.R. § 404.1527(a)(1), as Dr. Conner's statements do here.

§ 404.1527(a) (emphasis added). Put differently, such statements of what Claimant "can still do despite impairment(s)" are sufficient to amount to medical opinions but not necessary. And to the extent the Commissioner believes Dr. Conner's statements did not discuss the severity of Claimant's impairments, as discussed above, the statements do.

And in fact, Commissioner's own cited authority rejects the Commissioner's exact argument raised here—that is, an opinion must contain statements as to symptoms, diagnosis, prognosis, or what claimants can still do despite impairments, or mental restrictions before it can be considered a medical opinion. *See Parvon v. Colvin*, 2016 WL 1047992, at *10 (D. Haw. Mar. 11, 2016). In *Parvon,* the court found statements made in a questionnaire amounted to a medical opinion and rejected the Commissioner's argument that an examining doctor's questionnaire "does not constitute opinion evidence" because the doctor's statement "provides no discussion of [claimant's] specific functional limitations and does not specify what, if any, limitations Plaintiff had in his ability to perform basic mental work activities." *Id.* (quotation marks and brackets omitted). Specifically, *Parvon* found that the Commissioner "provide[d] no case law in support of the contention that medical opinions must contain a description of what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *Id.* (quotation marks omitted). Indeed, *Parvon* found, and

this court agrees, "that the regulations simply state that medical opinions may *include* statements regarding a claimant's limitations or restrictions." *Id.* (internal citations omitted).

Accordingly, because such statements in the questionnaire amounted to a medical opinion by Dr. Conner, the ALJ's failure to explicitly consider the opinion amounted to legal error. *See* 20 C.F.R. § 404.1527(b) ("[SSA] will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive") & (c) ("Regardless of its source, [SSA] will evaluate every medical opinion we receive.").

## B. Whether the ALJ's failure to consider the medical opinion was harmless error

Because the court finds the ALJ committed legal error, it now addresses whether such failure to consider the opinion of Dr. Conner was nevertheless harmless.

"Although [the Ninth Circuit has] expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, [it has] adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In making this assessment, the

court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.* And "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). This rule reflects how "[the Ninth Circuit's] precedents have been cautious about when harmless error should be found." *Id.*

The Commissioner argues that any error by the ALJ is harmless because Dr. Conner's finding in the C&P exam, which is the equivalent of being 30% disabled under VA regulations,[6] is consistent with the ALJ's finding at step five that Plaintiff should be limited to "simple or detailed but not complex work, and only occasional interactions with others." Answering Brief at 14, ECF No. 14 at PageID #2036 (citing AR 44). Put differently, the Commissioner argues that because the ALJ found there were available occupations under the most restrictive scenario provided by the ALJ (of "simple or detailed but not complex work, and only occasional interactions with others"), the ALJ's Decision would have already captured any limitations reflected in Dr. Conner's opinion. The court disagrees.

The ALJ proffered several scenarios with varying limitations and restrictions, including "occasional . . . contact with coworker[s], supervisor[s], and

---

[6] While Dr. Conner does not specifically find Claimant 30% disabled, he used language which, under VA regulations, places him at a level of 30% disabled. During the January 13, 2020 hearing, both parties agreed that the language used by Dr. Conner is the equivalent of a 30% disability rating under VA regulations.

15

the public" or the ability to work on "simple" or "routine" tasks, *see* AR 124; however, none of these restrictions factored in the ability of Claimant to stay on task. Dr. Conner specifically opined that depression affected "his ability to sustain concentration at work," *id.* at 1059. Accordingly, Dr. Conner offered an opinion that directly touched upon Claimant's ability to stay on task—something, which the vocational expert opined, if Claimant cannot do for 90% of the time, he could not work in any job. *See id.* at 127. The limitations of Claimant's ability to stay on task was not considered by the vocational expert in determining available occupations, nor, specifically, was Dr. Conner's opinion about Claimant's limitations as to his sustained concentration considered by the ALJ.[7] Thus, the ALJ's failure to consider such opinion by Dr. Conner as to Claimant's ability to stay on task was neither harmless nor inconsequential to the ALJ Decision.

In response, the Commissioner argues the court should find that such error is harmless because the ALJ, if he had considered Dr. Conner's opinion,

---

[7] The ALJ's reliance on Dr. Adamo does not otherwise make the error harmless. The ALJ found that "Dr. Adamo opined that the claimant may have difficulty with sustained concentration but can complete a full workweek." AR 47. To the extent the ALJ would have found Dr. Adamo's opinion more credible than Dr. Conner's as to this point, he must first "determine credibility and resolve the conflict" between the two opinions, *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009), and when rejecting "a treating or examining doctor's opinion [that] is contradicted by another doctor's opinion," he must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216; *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). Because the ALJ did not consider Dr. Conner's opinion, it follows that he failed to resolve the potential conflict between Drs. Adamo's and Conner's opinions before fully crediting Dr. Adamo's opinion.

would have found any limitations expressed in Dr. Conner's opinion to have equated to "simple and routine tasks," and that the ALJ would not have changed his hypothetical limitation scenarios presented to the vocational expert. The court finds that this would improperly step into the shoes of the ALJ. The court would have to speculate as to the weight the ALJ would have assigned Dr. Conner's opinion, and then further speculate as to which hypotheticals the ALJ would have assigned considering Dr. Conner's opinion. Perhaps the ALJ's findings would not have changed, but perhaps they would. The Commissioner has not provided authority showing, and the court does not believe, that its role here is to determine what the ALJ would have weighed and considered to reach his ultimate finding in order to determine whether the failure to consider Dr. Conner's opinion was harmless.

The Commissioner also argues that under Ninth Circuit authority, a VA 30% disability is consistent with the limitations and restrictions established by the ALJ, and thus, any failure to consider Dr. Conner's opinion is harmless. *See* Answering Brief at 14-15, ECF No. 14 at PageID #2036-37 (citing *Turner v. Comm'r of SSA*, 613 F.3d 1217, 1225 (9th Cir. 2010) and *Kevin B. v. Berryhill*, 2019 WL 3344626, at *8 (S.D. Cal. July 25, 2019)). Defendant's argument appears to be that *Turner* and *Kevin B.* stand for the proposition that a 30% disability rating would, as a matter of law under Ninth Circuit authority, be

17

consistent with "simple routine tasks" for RFC determinations. These cases are distinguishable. In both *Turner* and *Kevin B.*, the ALJ *considered* the VA disability ratings of 30% and the medical evidence in support of such rating *before* determining that these ratings were consistent with the RFC limitations of "simple, routine tasks" as to those claimants. *See Turner*, 613 F.3d at 1225-26 (no legal error because the ALJ had considered and assigned the VA disability rating proper weight when it incorporated the 30% VA disability rating into the RFC determination); *see also Kevin B.*, 2019 WL 3344626, at *8 (finding the ALJ did not commit legal error when it considered and rejected the VA disability rating of 100%, finding the medical record supported that claimant can do "simple, routine tasks," which is not "incongru[ous]" to a 30% rating with the VA).[8]

---

[8] Defendant also cites *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011), *Eric Burrell M. v. Berryhill*, 2019 WL 2719411, at *9 (C.D. Cal. June 28, 2019), and *Parvon* for the broad proposition that "a low-level . . . VA disability . . . was consistent with the ability to perform simple work." *See* Answering Brief at 15, ECF No. 14 at PageID #2037. These also fail. Contrary to Defendant's assertion, *McLeod* reaffirms the court's position here. *McLeod* held that ALJ's failure to consider the VA disability rating at all, like the failure to consider Dr. Conner's opinion here, was not harmless error. 640 F.3d at 886-88. *Parvon* similarly supports the court's position here—while *Parvon* did note that Dr. Tzetzo's opinion of "mild" impairments was consistent with "occasional limitations," *Parvon*, like the court here, remanded because Dr. Tzetzo opined on a limitation "that the ALJ . . . left out of his [RFC] assessment." 2016 WL 1047992, at *12; *see id.* ("It is therefore unclear whether the social and adaptive limitations . . . would change the step four analysis, or whether the additional limitation not attributable to Plaintiff was determinative of the VE's assessment that the person the ALJ described in his hypothetical would be incapable of performing Plaintiff's past work."). The ALJ in *Eric Burrell M.*, like *Turner* and *Kevin B.*, considered and assigned a weight to the medical opinion. *See* 2019 WL 2719411, at *9.

Here, the ALJ *never considered* Dr. Conner's opinion when evaluating limitations and available occupations, and thus, could not have assigned any weight to that opinion. Such failure to consider his opinion was not harmless—whether Claimant could stay on task, in the context of other limitations, may have impacted the available vocational occupations, including potentially having no occupations available at all. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) ("Because the hypothetical posed by the ALJ to the vocational expert did not reflect all of [claimant's] limitations, the expert's opinion has no evidentiary value and cannot support the ALJ's decision. This requires that we remand [claimant's] case to the [Commissioner] for reconsideration.") (citing *Varney v. Sec. of Health and Human Servs.*, 846 F.2d 851, 585 (9th Cir. 1988) & *Gamer v. Sec. of Health and Human Servs.*, 815 F.2d 1275, 1280 (9th Cir. 1987)).

///

///

///

///

///

///

///

///

# V. CONCLUSION

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS back to the ALJ for further proceedings consistent with this Order. The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 21, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*McClurkin v. Saul*, Civ. No. 19-00234 JMS-RT, Order Reversing ALJ Decision and Remanding for Further Proceedings, ECF No. 13.